Good morning, Your Honor. Good morning, Counsel. Mark Williman, representing Mr. Carrillo-Lopez. There are three matters that are before the Court. One of them deals with the comments made by a prosecutor in closing argument as to my client's Fifth Amendment right to remain silent. The second one talks about the prosecutor's comments to the jury as to my obligation to remain silent. And the third issue specifically deals with whether or not a document was properly founded or certified. I'm an emotional guy, and as to issue one, if I were arrested improperly, I probably would have said the things that Mr. Albert said. Why are you arresting me? What are you doing? Get your hands off. But since the inception of the Fifth Amendment, we have the right to remain silent. Now, in this particular situation, Mr. Carrillo said, okay, okay, okay. In custody, you have that right. Absolutely. But was he in custody at that point? It doesn't really matter, Your Honor, because what we're not talking about is what he said. That's not the issue. The issue is what he didn't say. Mr. Albert brought in a hypothetical and said, isn't this what an innocent person says? Does an innocent person react this way? Or does he say, why are you arresting me? What are you doing this for? Get your hands off me. That's the issue here. I never had any issue with the okay, okay, okay. That was misdirection by the government. It was what was not said that was important. This is directly on point with Velarde Gomez. Specifically what happens if Mr. Carrillo Lopez kept his mouth shut, clearly Mr. Albert could not mention his statements. But it's the underreaction. Is this how an innocent person behaves? Or should he have done this other thing when he was arrested? Clearly, the Fifth Amendment doesn't allow that. As to burden shifting of the second issue... Well, just so I understand, what would have been proper comment on the demeanor and reactive behavior of your client? Mr. Albert was within his right, although he was coming to the precipice, when he said the defendant deflated and he said, okay, okay, okay. That's it. As soon as he said, is that how an innocent person behaves, he went over the line. He's coming across the border, right? With drugs, yes, Your Honor. And he has an obligation to disclose all the contents in the vehicle, right? Yes, Your Honor. All right. And then he is chagrined that the agent doing the inspection finds it and physically reacts to the finding, right? We've now crossed the border. There is no evidence... No, no. You're still at the border search. He has not been released from the border search yet, has he? No, sir. You're correct. So you're at the border and the officer is conducting the search. Absolutely. That's when the reaction comes, and all the officer does is testify what he observed during the border search. No problem with that. No problem. So it's all there. Absolutely. We're there. Okay. But the point that I'm trying to make is when the prosecutor goes to a jury and says from the jury's perspective, you, the jury, you need to look at what a person behaves. How does an innocent person react? That's the fact. But he didn't go there, Judge. What he specifically said was he should have said when he was arrested, why are you touching me? What are you arresting me for? But he never said those things. It's the epitome of what the Fifth Amendment is about is the right to remain silent. Since its inception, what we've been held to believe that a person, when arrested and when accused, can keep their mouth shut. They have no obligation to say anything. They don't at the border have an obligation to disclose the contents of the vehicle? I have no problem with that. But the problem that I have is that you can't put words into a defendant's mouth saying that this is the way an innocent person would behave. An innocent person would be indignant and object to this. That's what an innocent person would behave. That's where the Fifth Amendment gets trampled. As far as the second issue, Your Honors, we have no burden, the defense has no burden to present anything. That's been long held. Even though the prosecutor says we have the right to do this, you can't comment on the defendant's right to do something. Don't comment on my right. You either bring in the evidence, and as a defense attorney, I'll challenge you and your evidence. But don't tell me what my burden is. And don't shift the burden to me. Lastly, the issue is whether or not a foreign document can be used. Kennedy. How do you address U.S. v. Cabrera? I don't think it's on point, Judge. I don't think it's relevant. The fact of the point is, is that you can't comment on a person, that nobody can comment on the defendant's burden to do anything at trial. It's not relevant. Well, I thought that case indicated that comment on a failure to call a witness doesn't shift the burden. Comment on defendant's failure to call a witness does not shift the burden of proof and is therefore permissible so long as the prosecutor does not violate the defendant's failure to testify. Exactly. Why is that not on point? The reason why, Judge, if you look at the factual history of that, what basically happens is the defendant testified and he presented a defense. In our case, we never presented a defense. But failure to call a witness. There was no comment on your client's failure to testify. Your Honor, the Cabrera case talks about when a defense actually puts on a defense, then the defense — then the prosecutor can comment on the lack of the defense. But when the defense does not put on a defense at all, and they just simply leave it on the record, then it's a merely attack of the prosecution's case. It shouldn't — I guess it's competing case-in-chiefs. When the prosecution puts on a case-in-chief and the defense rests, then the attack is only on what's in front of the jury. If both sides put up a case-in-chief, then it's fair game. In this particular situation, it was only the prosecution's case-in-chief that was to comment. Since there was no case-in-chief for the defense, you can't make any comment to it. It's as simple as that, Judge. I'll reserve the rest of my time. Thank you. Good morning, Your Honor. May it please the Court, Elizabeth Barringer, Assistant U.S. Attorney on behalf of the United States. The District Court properly found that no error occurred during the prosecutor's closing argument. First, I'm going to talk about how the prosecutor did not improperly comment on the defendant's silence. Here, the defendant was not silent. He made a statement. He said, okay, okay, after deflating and dropping his head. And the prosecutor then commented on this statement. It was perfectly permissible for the government to say that his statement was inconsistent with someone who lacked knowledge but consistent with someone who knew that the cocaine was in the vehicle. Why isn't it an applied comment on a person's right to say nothing about his innocence? He didn't have to testify at all. So isn't there some suggestion that he should have affirmatively come forward and testified in effect or behaved in an innocent manner when the border guard confronted him? No, for two reasons. First is that it's permissible for a prosecutor to make comments on the evidence. And in this case, the defendant did make a statement, and it was perfectly within his ---- The question is, you can't comment on a person's failure to testify, and you also can't comment on a person, on a defendant's invocation of the Fifth Amendment right to remain silent. So there are limits on which, on the content of the comment. Yes, Your Honor. The Fifth Amendment definitely has limits on it, but the Fifth Amendment was never implicated in this case because this was pre-arrest silence, according to both Oblinger and Beckman. The defendant was at the secondary inspection area. He had been handcuffed, detained, put in a cell. The drugs hadn't been discovered. He didn't even know what the ---- what Inspector Mellon had found at this point. Inspector Mellon had touched it. And he specifically says in the record, I didn't tell him what I'd found because I wanted to see how he reacted. So your argument is primarily then that the comment was okay here because he was not in custody. It was probably ---- The Fifth Amendment hadn't attached. That's one of the two components. First, that he was not commenting on his silence. He was commenting on something he actually said and did, which is ---- But he was also commenting on what he didn't say. If the Court does believe that, it was still pre-arrest silence, so it was perfectly permissible. But this can be distinguished from Velarde-Gomez, where in Velarde-Gomez, this Court found it was inappropriate because there was no outward physical manifestation. He never said anything or did anything when he was confronted with the drugs. Here, the defendant deflates, drops his head, and says, okay, okay. It's perfectly permissible under the Ninth Circuit authority to make comments on that reaction and how it's consistent with knowledge that drugs were in the vehicle. If this Court does find that he was in custody and the Fifth Amendment was implicated, it would contravene all of this Court's authority in this area regarding border searches. I'm concerned about a prosecutor saying, well, you know, he had a right to take photographs, he had a right to examine the truck. That seems, at a minimum, a rather sleazy approach to these types of cases. Why should a prosecutor, when no defense has been put on, be allowed to do that? Your Honor, this Court's authority allows that so long as the government reminds the jury where the burden of proof lies and does not make any comment on the defendant's failure to testify. I know that we talked about Cabrera during defendant's argument, and there was a distinguishing characteristic in that the defendant did not testify that case. But in Vanderine, the defendant did not testify, and the Court found that the prosecutor's comments about the defendant's failure to present exculpatory evidence was permissible because the prosecutor had repeatedly reminded the jury where the burden of proof lied and had never mentioned the defendant's failure to testify, which happened in this case. The prosecutor repeatedly reminded the jury that the government had the burden of proof. The Court reminded the jury that the government had the burden of proof. And it was in response to defense counsel's arguments that where is the gas tank? Why did the government bring the gas tank? Why are they hiding the gas tank? It's perfectly permissible for the prosecutor to then come in and say they had the right to bring in this gas tank if it was so this shining golden key of evidence. Under the case law, that is permissible. Vanderine was a plain error review. Was this a plain error review here as well? No objections? Your Honor, there was an objection at this case. So Vanderine is saying that it was a plain error? I think the reasoning of Vanderine still applies, however, especially in light of Cabrera and Williams. Even if the Court believes that the prosecutor's comments were improper in this context, first of all, it's an abusive discretion standard, and second, it was harmless because the other evidence of knowledge was very strong in this case. The defendant was the driver. He was the sole owner and occupant of a car carrying 32 pounds of cocaine that had a street value of $250,000 to $1 million. This Court has held that evidence is sufficient to support a conviction. And here there was even more evidence. The defendant was evasive and nervous at the border. Sixty to 70 percent of the gas carrying capacity of the gas tank had been eliminated by the modification. The defendant was very interested in the search, very wide-eyed. He kept wanting to get out of the car. His statements when he didn't even know that the drugs had been discovered, the agent walks up to him to secure him, and he says, okay, okay, and he puts his head down and deflates. The jury would have concluded beyond a reasonable doubt that the evidence of knowledge was there. Now I'm going to talk about how the District Court did not plainly err in admitting Exhibit 4. This was not raised below, even if the paragraph in Defense Counsel's reply brief that was taken a little bit out of context. If you look at the quote, it's on ER 5 and 6. It's actually in the context of a hearsay objection. And if the Court doesn't have any further questions, we respectfully ask the Court to affirm the conviction. Okay. Thank you. One of the things I've noted from the State's argument is that we need to look at the evidence. What I'd ask the Court to do is look at it from the jury's perspective. What we need to do is we need to realize that we're dealing with a jury that, for the most part, aren't lawyers. And from their perspective, what do they understand the law? When a government official representing the United States tells them that they are to consider what was not said because that's not the way innocent people behave, something's wrong. Didn't the trial court instruct the jury that it was giving the jury the law and that was the law that they were to follow? Are you talking about the facts? Are you talking about the law? I'm talking about both, Judge. All right. The trial court gave the jury an instruction. Is there a claim of error in the instructions? No, sir. No. The instructions were proper. Fine. And that laid out the law. And the jury was told to follow it. Your Honor, though, when a government official with a full force of the United States government tells a jury that they are to infer that something that was not said means that he's not innocent, the defendant was not innocent, that's wrong. When the prosecutor tells a jury that the defendant has a right to bring in evidence, the evidence that the defendant brought in at trial to say that they've got holes in their case, sure, we may have that right, but you can't tell the jury that I have that right. That's where the error comes. And more importantly, when the document needs to be certified, there's nine rules of evidence, 903, talks specifically about how evidence is supposed to be certified, and it's not something is wrong with the process, Judge. What was the registration offered for? Wasn't it offered as a document presented by the defendant? To prove the truth of the matter asserted that he owns the vehicle. Correct. That's what he gave them when asked if he wanted the registration. Yes, sir. And that's sort of the most interesting part of this. Do we base rules of evidence on what was the intent of the document being given, or do we view rules of evidence for the context and the authenticity of what's being presented? That's you've caught, Judge, that's exactly what the real interest. I find that the ---- Was there an objection on certification? Yes, there was, Judge, and it was pretrial. I made reference to it in the ---- There was a whole lot of discussion about asking the court to redact evidence number four and to document number four. I had asked the court to redact it because the court was going to use it for the truth of the matter asserted, and I said that they can't do it. They can surely give the document to the jury saying this is a document that the defense gave us or the defendant gave us to show that he owned the vehicle, but the information on it needs to be redacted unless it was certified, because what the government was using it for was to prove that Mr. Carrillo owned the vehicle. Well, why wasn't his tendering an admission of ownership? Well, again, it is an admission, but it's an admission ---- Well, how is this harmful? I'm sorry? How is this harmful for absence of certification? In the scheme of what happened, Judge, it's minor. Okay. Thank you, Your Honors. Have a good day. Thank you, both counsel. The case argued is submitted.
judges: B. Fletcher, Beezer, Fisher